UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:17-CR-58-REW-HAI |
| v. | ) | |
| | ) | OPINION AND ORDER |
| APRIL BOWLING, | ) | ON OBJECTION TO § 851 NOTICE |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court has thoroughly considered whether Defendant April Bowling's previous Kentucky conviction for theft of a prescription blank is a prior "felony drug offense" triggering the twenty-year mandatory minimum sentence outlined in 21 U.S.C. § 841(b)(1)(A). The United States provided Bowling the required pre-plea notice of its intent to pursue the enhancement under § 851(a), based on her prior conviction under KRS § 218A.286(1). The statute of conviction provides: "A person is guilty of theft of a prescription blank when he unlawfully takes or exercises control over a prescription blank belonging to another." KRS § 218A.286(1). A "felony drug offense" is one "that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). Does the prescription blank theft count for Title 21 enhancement?[1]

---

[1] The United States argued that the § 3553(e) motion (eliminating the mandatory minimum) and the guideline range exceeding the minimum render the issue moot. The Court disagrees. Properly defining the minimum matters, even if the Court has authority to sentence below it. *See, e.g.*, *United States v. Winebarger*, 664 F.3d 388, 394–95 (3rd Cir. 2011) ("While § 3553(f) instructs district courts to disregard a statutory minimum in appropriate circumstances, § 3553(e) retains the statutory minimum as a reference point and explicitly notes the factor that such a divergence

1

The Court and parties focused on whether this question turns on a categorical or conduct-specific analysis. The circuits have somewhat diverged in their analyses of qualifying offenses under § 802(44). Most recently, the Seventh Circuit considered whether a defendant's prior Arizona dangerous drug conviction was a felony drug offense. Informed by the Supreme Court's decisions in *Mathis*, *Descamps*, and *Taylor*,[2] the court employed the categorical approach and concluded that the prior conviction failed to qualify under § 802(44). *United States v. Elder*, 900 F.3d 491, 501–02 (7th Cir. 2018). The categorical approach "compar[es] the state statute of conviction to the federal statute in question and ask[s] whether the two statutes are a categorical match." *Id.* at 498 (citing *Mathis*, 136 S. Ct. at 2248). The Seventh Circuit joined the First, Fourth, and Ninth Circuits[3] in embracing this analytical tool to assess whether a prior conviction qualifies as a felony drug offense.

Alternatively, a court that declines to view § 802(44) categorically "looks to 'the specific way in which an offender committed the crime on a specific occasion' to determine whether the prior conviction qualifies as a predicate offense under the federal statute at issue." *Id.* (quoting, by way of example, *Nijhawan v. Holder*, 129 S. Ct. 2294, 2288 (2009)). Here, the parties agree that if the Court employs a circumstance-specific approach, there is an adequate basis for applying the

---

from the reference point should reflect."); *United States v. Jackson*, 577 F.3d 1032, 1035 (9th Cir. 2009) ("If Congress had meant to render mandatory minimums completely inoperative in the case of reductions pursuant to § 3553(e), it . . . would have used language like that in 18 U.S.C. § 3553(f), which authorizes the district court to impose a sentence 'without regard to any statutory minimum sentence.'"); *United States v. Ahlers*, 305 F.3d 54, 58–60 (1st Cir. 2002) ("Unlike section 3553(f)—under which the mandatory minimum is to be disregarded once certain conditions are met—section 3553(e) retains the mandatory minimum as a reference point for a specific, carefully circumscribed type of departure.").

[2] *Mathis v. United States*, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 133 S. Ct. 2276 (2013); *Taylor v. United States*, 110 S. Ct. 2143 (1990).

[3] *United States. v. Brown*, 500 F.3d 48, 59 (1st Cir. 2007); *United States v. Nelson*, 484 F.3d 257, 261 n.3 (4th Cir. 2007); *United States v. Ocampo-Estrada*, 873 F.3d 661, 667–69 (9th Cir. 2017).

enhancement. The record reveals that Bowling attempted to use the stolen prescription pad to secure opiates. *See, e.g.*, DE #135-1 at 7.

Without comprehensive analysis of the issue, the Sixth Circuit has indicated in an unpublished opinion that it (1) construes § 802(44) broadly and (2) eschews the categorical approach: "[T]his court does not employ a categorical approach to determining whether a prior conviction constitutes a 'felony drug offense' for purposes of section 841(b)(1). Even if we did, section 802(44) defines 'felony drug offense' broadly to encompass any offense that 'prohibits or restricts conduct relating to narcotic drugs[.]'" *United States v. Soto*, 8 Fed. Appx. 535, 540 (6th Cir. 2001) (unpublished).[4] Of course, the Sixth Circuit decided *Soto* over a decade prior to *Mathis* or *Descamps* and has not revisited the issue since. Whether it would reach the same decision in light of intervening Supreme Court case law, and the trend initiated by the First, Fourth, Seventh, and Ninth Circuits, is certainly an open question.

*Mathis* emphasizes three key factors relevant to applying the categorical approach in the context of a federal recidivism statute: (1) the text of the statute at issue; (2) any "Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to

---

[4] Other Sixth Circuit decisions lend support to an expansive reading of § 802(44). *See United States v. Grayson*, 731 F.3d 605, 607 (6th Cir. 2013) ("'relating to' carries a broad meaning—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'"); *United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998) ("The use of the expansive term 'relating' as the only substantive limitation on the reach of the statutory phrase 'felony drug offense' clearly indicates that the statute encompasses drug offenses that involve the simple possession of drugs."). Courts in this district have rejected the categorical approach in the § 802(44) context. *See United States v. Sydnor*, No. 16-21, 2018 WL 1431744, *1, *4 (E.D. Ky. Mar. 22, 2018); *United States v. Shields*, No. 16-85, 2018 WL 561856,, *1, *1 (E.D. Ky. Jan. 25, 2018); *Leonard v. Ormond*, No. 17-191, 2017 WL 6503622, *1, *4 (E.D. Ky. Dec. 19, 2017); *Stone v. Butler*, No. 17-152, 2017 WL 5618289, *1, *2 (E.D. Ky. Nov. 20, 2017); *United States v. Wing*, Nos. 13-87 & 16-09, 2016 WL3676333, *1, *2 (E.D. Ky. July 7, 2016).

juries[;]" and (3) the practicality or unfairness of applying a circumstance-specific approach. *Elder*, 900 F.3d at 498 (quoting *Descamps*, 133 S. Ct. at 2280).

The language of § 802(44) directs courts to evaluate the *law* underlying the prior conviction, to determine whether it prohibits or restricts conduct "relating to" (in a broad sense) the substances listed. A textual approach strongly suggests categorical analysis. Like the Armed Career Criminal Act (ACCA) at issue in *Mathis*, § 802(44) lacks reference to underlying specific conduct or behavior; rather, the focus is on the *fact* of a prior conviction bearing qualifying criteria.[5] Here, even more convincingly, the cornerstone of § 802(44)'s application is assessment of the statute of conviction itself and whether that law regulates behavior relating to the listed drugs.

Further, delving into aspects of an offense that are not required as a conviction basis surely risks Sixth Amendment problems. As *Mathis* made clear, in the recidivism context, the fact of conviction (and the underlying required offense elements) properly trigger enhancement. *See* 136 S. Ct. at 2246 ("to allow a sentencing judge to go any further [than an elements-only inquiry] would raise serious Sixth Amendment concerns because only a jury, not a judge, may find facts that increase the maximum penalty"); *see also Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013) ("The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense."). Judge-found recidivism facts pertaining to crime details threaten to cross the *Alleyne* line.

---

[5] And § 841(b)(1)(A) hinges on the existence of "a prior conviction," not on the commission of specific or particular acts.

Finally, while the record here is clear enough, generally allowing evaluation of details about a crime not qualifying as crime elements could introduce unfairness. Thus, as the Seventh Circuit reasoned, the categorical approach avoids this "because its focus on elements, rather than extraneous facts, means that any 'inaccuracies' in the record documents do 'not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence.'" *Id.* at 500 (quoting *Mathis*, 136 S. Ct. at 2253).

The Court is dubious that *Soto* would reach the same result today, given the clarifications by *Descamps* and *Mathis*, and the clear circuit trend. Yet, *Soto* (albeit unpublished) is a circuit decision, and other Sixth Circuit cases (like *Grayson*) in no way engaged in categorical analysis. Although the Court predicts *Mathis* would alter the outcome, given *Soto*, it declines to go that far. In part—as the proceeding discussion explains—this is because the Court views Bowling's conviction as qualifying under either theory.

Here, the statute of conviction really involves the commission of one crime—theft of a prescription blank. The simple question, then, is whether this felony conviction is one under a statute that "prohibits or restricts conduct relating to" the drug groups listed in § 802(44). The completed crime is theft of the blank. The term "prescription blank" has a defined meaning in this Chapter of the KRS, a Chapter wholly dedicated to "controlled substances." *See* KRS § 218A.005(1) (noting that the purpose of the Chapter is "[t]he regulation of controlled substances in this Commonwealth").

Under the Chapter, "'Prescription blank,' with reference to a controlled substance, means a document that meets the requirements of KRS 218A.204 and 217.216." KRS § 218A.010(42). Those cross-cited statutes specify the requirements under Kentucky law for prescriptions. The § 217.216 requisites apply to prescriptions generally, but § 218A.204, from the controlled

5

substances statute, expressly authorizes regulations defining "security requirements for all prescriptions written by practitioners." The ensuing regulation created the distinct "security prescription blank," which is the type of written prescription (featuring mandated security features to prevent abuse) required of practitioners prescribing controlled substances in the Commonwealth. *See* 902 KAR 55:105 § 2(2). This is the particular "prescription blank," relative to a controlled substance that Chapter 218A contemplates. Thus, a "prescription blank" within KRS Chapter 218A is a discrete kind of printed form, one mandated for use in the prescribing of controlled substances.[6]

In sum, Chapter 218A, by definition, is one addressing controlled substances. The creation of a security prescription blank as a requirement for prescribing practitioners serves to regulate controlled substances; a prohibition against theft of such a blank is plainly one targeting the dangers and problems associated with drug diversion. The remaining parts of KRS § 218A.286 enumerate related hazards. *See, e.g.*, KRS § 218A.286(2) and (3) (prohibiting criminal possession and trafficking of prescription blanks, respectively). Surely, given the Sixth Circuit's broad reading of the "relating to" element of § 802(44), the law at issue—criminalizing theft of a specific type of prescription blank, particular to controlled substances—is one that "prohibits or restricts conduct relating to" prescription controlled substances.

The only potential issue is whether the scope of KRS § 218A.286 mirrors the scope of § 802(44) in terms of the enumerated substances. The parties did not suggest any prescription

---

[6] There is a generic blank, which applies to legend drugs. *See* KRS §§ 217.207, 217.216, and 217.015(37) (jointly criminalizing the theft, criminal possession, or trafficking of a blank "that conforms with KRS 217.216[;]" these provisions make no reference to controlled substances). The theft of a prescription blank under Chapter 217 is a misdemeanor. KRS § 217.207(5). A prescription written for a non-controlled drug need not appear on the type of security prescription blank required by Chapter 218A and the authorized regulations.

6

controlled substance that would fall outside the broad umbrella of § 802(44), and the Court's independent review has found none. On this record, the drugs listed in § 802(44) blanket the scope of prescription controlled substances under Kentucky law. As such, a conviction for theft of a prescription blank is a felony under a Kentucky law that prohibits or regulates conduct relating to narcotic drugs, anabolic steroids, or depressant or stimulant substances.[7]

The United States properly filed the § 851 notice, and the Court finds that Bowling's prior conviction qualifies as a felony drug offense for purposes of sentencing.

This the 3rd day of October, 2018.

Signed By:
Robert E. Wier  REW
United States District Judge

---

[7] Marijuana, under Schedule I, would not apply because it, by definition under Schedule I, is not a prescription controlled substance.