UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:17-CR-58-REW |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| APRIL BOWLING, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In October 2018, the Court sentenced Defendant April Bowling to a 206-month term of imprisonment for her role in an aggravated methamphetamine trafficking conspiracy. DE 142 (Judgment). Bowling, now an inmate at FCI Tallahassee, has filed a *pro se* motion seeking compassionate release. DE 156 (Motion). 18 U.S.C. § 3582 governs the request. It, as amended by the First Step Act of 2018 (Pub. L. No. 115-391, 132 Stat. 5194 (2018)), requires an inmate seeking compassionate release either to "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf" or to wait "30 days from the receipt of such a request by the warden" before filing a motion with the Court. 18 U.S.C. § 3582(c)(1)(A).

Here, Bowling petitioned the FCI Tallahassee warden and received a rejection of her request on August 17, 2020. DE 156-1. She filed her pending motion more than thirty days after making that request. DE 156. The Court therefore found that Bowling met the pre-filing statutory requirement and ordered the Government to respond on the merits. DE 157. The Government complied, and the motion stands ripe for review. DE 160. Bowling's reply time has lapsed.

1

### I.     Legal Background

Generally, a "court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). However, Congress has established certain narrow exceptions. One such exception provides:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction; . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A) (relevant portions included).[1] By separate statute, Congress in 1984 explicitly directed the United States Sentencing Commission to define "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t); *see id.* at (a)(2) (directing promulgation of "policy statements regarding . . . the appropriate use of . . . (C) the sentence modification provisions set forth in . . . [§] 3582(c) of title 18").

The Sentencing Commission's responsive policy statement arrived in 2006, explaining, in relevant part, that "[e]xtraordinary and compelling reasons warrant the reduction; . . . [if the] defendant is not a danger to the safety of any other person or to the community . . . ; and [t]he reduction is consistent with this policy statement." USSG § 1B1.13 (2006); *see also United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Over the next twelve years, the Commission left that policy statement unchanged while building out a list of elucidative circumstances constituting

---

[1] This is a provision Congress recently broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice measure passed on December 21, 2018. *See* PL 115-391, 132 Stat 5194.

2

"extraordinary and compelling reasons" in the §1B1.13 application notes. *Jones*, 980 F. 3d at 1104.

When the most recent edition of the Guidelines (2018) issued, § 3582(c) allowed only the BOP to move for compassionate release. *Id*. That changed with the passage of the First Step Act of 2018, which enabled prisoners to circumvent the typically languid BOP and petition courts directly for compassionate release. PL 115-391, 132 Stat 5194; *see also Jones*, 980 F.3d at 1104. Before the Commission could update the Guidelines to reflect or react to this statutory change, "the forces of law and nature collided" and the COVID-19 pandemic gave rise to thousands of prisoner-initiated compassionate release requests. *Jones*, 980 F.3d at 1100.

As a result of the statute leapfrogging the Guidelines, reviewing courts faced a question: Does §1B1.13, written with only BOP-initiated release requests in mind, count as an "applicable policy statement" to guide review of prisoner-initiated §3582(c)(1)(a) release requests? The Sixth Circuit recently answered the question in the negative in *Jones*. 980 F.3d at 1109. As a result, district courts have (at least until the Sentencing Commission updates the Guidelines), "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

Accordingly, prisoner-initiated compassionate release requests now face a "three-step inquiry."[2] The Court determines (1) whether "extraordinary and compelling reasons" warrant a sentence reduction, (2) whether release, if granted, would be "consistent with applicable policy

---

[2] In *Jones*, the district judge "assumed for the sake of argument that extraordinary and compelling reasons existed in Jones's case" before proceeding to ultimately decide the case based on a balancing of the § 3553(a) factors. 980 F.3d at 1108. Accordingly, the Court does not see a requirement that each step must be occur in a particular sequence.

statements issued by the sentencing commission,"[3] and (3) whether release is appropriate in light of the § 3553(a) sentencing factors. *Id.* at 1101.[4] In any § 3582 action, the defendant, as the movant, bears the burden of establishing eligibility for a reduction in sentence. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

## II. Bowling Does Not Satisfy the Requirements for Release

Bowling argues for release to home confinement for the remainder of her sentence due to the "extraordinary risks to [her] health" posed by COVID-19. DE 156 at 1. As the Government points out, Bowling "provides no specific details of her current health or medical condition." DE 160 at 5. She asserts no particulars that would reflect heightened risk as to either the likelihood of contracting COVID or the exacerbated effects on her from any potential infection.

The BOP's COVID site indicates that FCI Tallahassee currently has 4 active infections among the inmate population of 804—a rate of approximately one half of one percent.[5] Every single COVID-19 diagnosis inside a prison is a serious matter that must be addressed swiftly and effectively. But the situation does not, at present, suggest a compelling basis for release under § 3582. Bowling does not state precisely where she would live upon release, but in the areas that she inhabited prior to her arrest, COVID-19 spread is significant. In Laurel and Whitley Counties,

---

[3] Because § 1B1.13 no longer applies here, step two is something of a phantom, at least until a new iteration of the Guideline issues. If applicable, §1B1.13 would not have allowed relief—Bowling does not present a limiting "medical condition," or other qualification that would cross the threshold set forth in Application Note 1 to the policy statement.

[4] § 1B1.13 also directs courts reviewing BOP-initiated compassionate release requests to determine, pursuant to 18 U.S.C. § 3142(g), whether granting relief would pose a risk to the safety of others or the community. Per *Jones*, the § 3142(g) evaluation is not explicitly required when reviewing prisoner initiated § 3582(c) requests. But much of this this calculus emerges in the mandatory § 3553(a) evaluation.

[5] https://www.bop.gov/coronavirus/ (last visited Dec. 18, 2020).

approximately 61 and 48 news cases are being reported per day, respectively.[6] The entire country has struggled to contain COVID-19. Nearly 17 million people in the United States have contracted the virus. That number grows by more than 200,000 each day.[7] Regardless of whether Bowling remains in prison, or is released, she will continue to be at risk of exposure to COVID-19, as all are.

A disproportionately widespread COVID-19 outbreak within a prison, a highly vulnerable inmate, or the appropriate combination of those two factors could constitute an "extraordinary and compelling" reason for early release. *See e.g. United States v. Herring*, No. 6:14-cr-008, 2020 WL 6886256, at *2 (E.D. Ky. Nov. 24, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *2 (E.D. Mich. Dec. 9, 2020). Here however, Bowling, the bearer of the burden, does not qualify. Bowling is young (now 33) and asserts no particular medical malady. There is no indication that FCI Tallahassee has a particularly high rate of COVID-19, and Bowling would continue to face risk outside of the facility. These factors do not present extraordinary and compelling circumstances.

Alternatively, the Court would not grant the motion under the balance of the required analysis. Even if Bowling had presented "extraordinary and compelling" reasons for her release, such relief would still not be appropriate, in the Court's consideration, in light of the apt sentencing factors set forth in § 18 U.S.C. §3553(a). The Court carefully considered all sentencing purposes and factors at the time it imposed judgment; release at this point, a minor fraction of the way through a 206-month term, would undercut the § 3553(a) factors.

---

[6] *County Level Coronavirus Tracker*, N.Y. TIMES, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?action=click&module=Spotlight&pgtype=Homepage (last visited Dec. 18, 2020).
[7] *CDC Daily COVID-19 Tracker*, https://covid.cdc.gov/covid-data-tracker/#cases (reporting 16,987,911 cases as of December 18, 2020).

5

Bowling is in prison for her significant role in a rangy methamphetamine trafficking conspiracy. DE 60 (Plea Agreement). Bowling developed a source in Georgia and would travel there, and direct others to travel there, to obtain methamphetamine for distribution in Kentucky. *Id.* at 2. In doing so, Bowling caused more than 500 grams of methamphetamine to be transported to, and distributed in, eastern Kentucky. *Id.* Ultimately, the Court attributed between 5 and 15 kilograms of methamphetamine to Bowling, so sentencing her. DE 150 (PIR ¶ 33). At the time of her sentencing, Bowling had a criminal history score of 12, was a category VI, and had a history of crime including drug recidivism. *Id.* at 9–16. She managed a high-volume meth ring over a lengthy period, continuing despite intersession by law enforcement.  Her crime occurred during a period of court oversight.  Bowling's history and case circumstances make releasing her with 13 years left to serve glaringly inappropriate. Granting release to any defendant before she has completed even a quarter of her sentence cuts against the values of § 3553(a). Granting relief here, to a persistent recidivist who has frequently exhibited a lack of respect for the law, is wholly unjustified. The sentence parsimoniously aimed at showing crime gravity, promoting respect for the law, justly punishing, adequately deterring crime, and effectively protecting the public from a person of demonstrable danger. Releasing Bowling now would enervate the purposes that catalyzed the sentence. Bowling's significant leadership role, the quantity of methamphetamine involved, and the mandatory minimum (otherwise) applicable to the offense signal crime gravity and the need for a correspondingly serious, fairly punitive, sufficiently deterrent, and responsibly protective sentence. The Court ultimately imposed a sentence at the lowest level it could, consistent with § 3553(a). The pandemic has not changed that calculus.

### III.   CONCLUSION

In the colloquial sense, the COVID-19 pandemic surely presents extraordinary and compelling concerns for all incarcerated individuals, particularly those with preexisting conditions who might be at a higher risk of a severe reaction to the virus. However, those circumstances were not, prior to the Sixth Circuit's decision in *Jones*, "extraordinary and compelling" reasons for granting early release under § 3582(c)(1)(a). Now, at least until the Sentencing Commission issues an update, § 1B1.13 no longer provides the roadmap for courts reviewing prisoner-initiated compassionate release requests. Instead, district "courts have full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones*, 980 F.3d at 1109.[8]

Here, Bowling's request turns entirely and generically on the risk of contracting the COVID-19 virus. The heightened risk of a contagious disease sweeping through a prison is real. The presence of cases at the facility, while not insignificant, must be considered in the context of the storm raging across the country. Further, Bowling's age and personal health record, suggest that she is not, at present, more susceptible to the virus, or its dangerous sequelae, than others.

Finally, even if extraordinary circumstances did warrant early release, consideration of the sentencing factors in § 3553(a) precludes it. Defendant's criminal history and leadership role in a methamphetamine trafficking conspiracy that led to the present sentence, and the small percentage

---

[8] Of course, if it so chooses, Congress may withdraw, circumscribe, or circumvent the authority it has vested in the Commission. Indeed, pending proposed legislation would explicitly deem the fact that a defendant is, "according to guidance from the Centers for Disease Control and Prevention, considered to be at a higher risk for severe illness from COVID-19, including because the defendant is 60 years of age or older or has an underlying medical condition," an "extraordinary and compelling reason under" § 3582(c)(1)(A)(i). 2019 Cong US S 4034 (June 22, 2020); *see also* 166 Cong. Rec. S4592-02, S4593 (July 29, 2020) (adding, as cosponsors, Senators Whitehouse, Wicker, Coons, and Tillis). Yet, the proposed legislation, for now, remains just that. It is the law on the books that binds this Court.

of time served on that sentence all counsel strongly against granting the requested relief. In its discretion, the Court, having considered the full record, **DENIES** DE 156 and rejects the request for release.

This the 21st day of December, 2020.

Signed By:
Robert E. Wier
United States District Judge