UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:17-CR-58-REW-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| APRIL BOWLING, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Defendant April Bowling, *pro se*, again moves for sentence reduction under 18 U.S.C. § 3582(c). *See* DE 180. She primarily argues that the Court should modify her sentence on account of familial circumstances. *See id.* The Government filed a response in opposition to Bowling's motion, *see* DE 181, and Bowling replied, *see* DE 183. Because Bowling has failed to establish circumstances that warrant a sentence reduction, the Court DENIES DE 180. To the extent she sought to raise novel claims or matters justifying reduction by way of a supplement made months after the briefing closed, *see* DE 185, the Court rejects that effort procedurally. She must exhaust the new grounds to present them under § 3582. It is not proper to raise such standalone issues in a post-reply supplement.

## I.   BACKGROUND

In 2018, Bowling pleaded guilty to "conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance," in violation of 21 U.S.C. § 846. *See* DE 60. After accepting Bowling's plea, *see* DE 62; DE 80, the Court sentenced her to a 206-month term of imprisonment with an eight-year term of supervised release to follow, *see* DE 142 at 2–3.

Bowling has since filed three motions for compassionate release. In the first motion, Bowling requested release on account of severe health risks associated with the COVID-19 pandemic. *See* DE 156. The Court denied, noting that Bowling "assert[ed] no particulars that would reflect heightened risk as to either the likelihood of contracting COVID or the exacerbated effects on her from any potential infection." DE 163 at 4. In the second motion, Bowling sought release due to her rehabilitation and betterment while in prison. *See* DE 177. The Court again denied, emphasizing that Bowling's progress did not constitute an extraordinary and compelling reason. *See* DE 178 at 2. And in the third motion now before the Court, Bowling seeks release based on her mother's deteriorating health, and relatedly, her mother's inability to continue caring for Bowling's daughter. *See* DE 180-1 at 9–10. She also claims that the Federal Bureau of Prisons ("BOP") has made various errors in calculating her time served or assigning credits and that her rehabilitative efforts entitle her to release.[1] *See id.* at 6–7. At the time of filing, Bowling had served approximately 40% of her imposed sentence. *See* DE 181-1 at 3.

The Government responded in opposition to Bowling's motion, initially noting with low vigor that she does not appear to have exhausted her administrative remedies. *See* DE 181 at 2. The Government then proceeded to address the merits of Bowling's motion, arguing that she has not demonstrated extraordinary and compelling reasons for sentence reduction, *see id.* at 2–5, and that the § 3553(a) factors do not support early release, *see id.* at 5–6. Bowling filed a reply in which she argues for the first time, in any detail, that she has received inadequate medical care in BOP custody. *See* DE 183 at 4–6. The matter is now ripe for decision.

---

[1] Bowling recently mailed a separate letter to the Court. However, the Court did not construe the content of that letter as relating to the present motion for compassionate release. To the extent that Bowling *did* seek to establish an extraordinary and compelling reason for release through that letter, the Court's ultimate denial is, of course, without prejudice to a properly exhausted motion.

## II.    LEGAL STANDARD

Courts may not generally "modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  Congress has, however, established certain narrow exceptions to this rule.  One such exception permits courts to:

> [R]educe the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if . . . extraordinary and compelling reasons warrant such a reduction . . . and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).[2]  By separate statute, Congress tasked the Sentencing Commission with identifying "what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t); *see also id.* § 994(a)(2)(C) (directing the promulgation of general policy statements regarding the use of the § 3582(c) sentence-modification provisions).

The Sentencing Commission has since defined extraordinary and compelling reasons, *see* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b) (U.S. SENT'G COMM'N 2025), and explained that courts may only grant a sentence reduction if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community," and the reduction is otherwise "consistent with this policy statement," *id.* § 1B1.13(a); *see also United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020).

Until 2018, only the BOP could move for compassionate release.  *See Jones*, 980 F.3d at 1104–05.  The First Step Act changed that by allowing defendants to circumvent the typically languid BOP and petition courts directly for compassionate release.  Pub. L. No. 115–391, 132

---

[2] This is a provision that Congress broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice measure passed on December 21, 2018.  *See* Pub. L. No. 115–391, 132 Stat. 5194.

3

Stat. 5194; *see also Jones*, 980 F.3d at 1104–05.  However, a defendant may only do so (1) after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion," or (2) upon "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A).[3]  The Sixth Circuit has recognized that exhaustion is a mandatory claim-processing rule that must be enforced.  *See United States v. Alam*, 960 F.3d 831, 833–35 (6th Cir. 2020).

Since the First Step Act's enactment, the Sixth Circuit has established a "three-step inquiry" governing prisoner-initiated motions,[4] directing courts to consider (1) whether "extraordinary and compelling reasons" support a reduction, (2) whether a reduction would be "consistent with 'applicable' Sentencing Commission policy statements," and (3) whether the § 3553(a) factors favor release.  *Jones*, 980 F.3d at 1101 (citing *Ruffin*, 978 F.3d at 1003–06).  As noted in greater detail below, the defendant bears the burden of demonstrating her eligibility for a sentence reduction.  *See, e.g.*, *Ruffin*, 978 F.3d at 1008–09.

Under the current policy statement, "extraordinary and compelling reasons" includes certain family circumstances, such as:

> The death or incapacitation of the caregiver of the defendant's minor child . . . , [t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver . . . , [t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver . . . , or [t]he defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose

---

[3] While § 1B1.13 previously only applied to BOP-initiated requests for compassionate release, *see Jones*, 980 F.3d at 1109–10, the Sentencing Commission amended its policy statement to govern motions filed by defendants, *see* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(a).

[4] The Court may deny a compassionate release motion "based on the defendant's failure to meet any one of [the] criteria." *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020)).  Granting release, though, requires a positive finding at each step. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021) (citing *Elias*, 984 F.3d at 519) ("[W]here the district court grants a motion for compassionate release, it must of course address all three steps.").

4

> relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver . . . .

*Id.* § 1B1.13(b)(3)(A)–(D). Additionally, there is a "catchall" category by which a defendant may establish extraordinary and compelling reasons if her circumstances "are similar in gravity to," but still distinct from, the specific categories set out in § 1B1.13(b). *Id.* § 1B1.13(b)(5). Congress has emphasized—and the Sentencing Commission has reiterated—that "[r]ehabilitation of the defendant alone" is never "an extraordinary and compelling reason." 28 U.S.C. § 994(t); U.S. SENT'G GUIDELINES MANUAL § 1B1.13(d). Rehabilitation may, however, be considered alongside other circumstances. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(d).

The Supreme Court has recognized that § 3582(c) creates only "a narrow exception to the rule of finality." *Dillon v. United States*, 130 S. Ct. 2683, 2692 (2010). Consistent with that notion, "[t]he defendant bears the burden of showing [s]he has exhausted h[er] administrative remedies and is entitled to compassionate release." *United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. 2020); *see also United States v. Burlingame*, 585 F. Supp. 3d 705, 713 (E.D. Mich. 2021) (noting that, for motions under § 3582(c), "[t]he burden is on Defendant to 'make a compelling case as to why the . . . § 3553(a) analysis would be different if conducted today'" (quoting *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021))).

### III.   ANALYSIS

#### A. Exhaustion Requirement

The Government contends that Bowling has failed to demonstrate that she either (1) fully exhausted all administrative rights to appeal the BOP's failure to bring a motion on her behalf, or (2) has waited at least 30 days since requesting that the warden of her facility bring a motion on her behalf. *See* DE 180; 18 U.S.C. § 3582(c)(1)(A). The Court is not persuaded that exhaustion is lacking as to all claims. Bowling has submitted a letter from Warden Kimberly Neely denying

her request for a sentence reduction based on her mother's health conditions. *See* DE 180-1. Although the letter is dated, the Court sees no basis to conclude that age alone defeats exhaustion.

That said, exhaustion is not satisfied with respect to the non-familial arguments raised in Bowling's motion, as there is no indication that those claims were presented to the BOP at all. Even so, in the interest of completeness, the Court assumes without deciding that the exhaustion requirement is satisfied and addresses the merits of the motion, which do not yield relief.

### B.  Failure on the Merits

#### 1.  Defendant Has Not Established Extraordinary and Compelling Reasons

Although the Court recognizes Bowling's difficult family circumstances as described, the Court cannot conclude—on the present record—that those circumstances are "extraordinary and compelling."  U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b).

*i. Family Circumstances (§ 1B1.13(b)(3))*

Bowling argues that her mother suffers from a range of health concerns that collectively render her unable to care for Bowling's minor child.  To be sure, the incapacitation of a minor child's caregiver can satisfy § 1B1.13(b)(3)(A).  Similarly, a parent's incapacitation can satisfy § 1B1.13(b)(3)(C) when the defendant is the only available caregiver for that parent.  However, Bowling has failed to establish that her mother is truly incapacitated.  As a result, she has not established an extraordinary and compelling reason for release.

 In assessing incapacitation, courts consider whether a person is "completely disabled and totally bedridden."  *United States v. McKenzie*, 636 F. Supp. 3d 892, 898 (E.D. Tenn. 2022) (finding defendant's fiancée was not incapacitated despite claims she could not lift her disabled son, because evidence did not show she was completely disabled, totally bedridden, or unable to care for her son in at least some capacity); *see also United States v. Stanton*, No. 6:21-CR-19, 2025

WL 1178583, at *3–4 (E.D. Ky. Apr. 23, 2025) (finding defendant's wife was not incapacitated despite her cancer diagnosis, in part, because she was not "confined to a bed or chair, requiring continuous, around-the-clock care"); *United States v. Carter*, No. 19-20195, 2025 WL 28442, at *3 (E.D. Mich. Jan. 3, 2025) (finding defendant's wife was not incapacitated when suffering from left-side paralysis after a stroke because nothing suggested that she "requires anything like intensive, around-the-clock care").

But to put it simply, the letters and medical records that Bowling has produced do not establish, and really do not even approach establishing, that her mother is incapacitated. To be sure, Bowling has presented evidence suggesting that her mother was treated for severe knee pain. *See* DE 180-2 at 18, 23–26. However, the fact that her mother required or was recommended for a knee replacement in 2024 does little to establish that she is presently "completely disabled and totally bedridden." *See McKenzie*, 636 F. Supp. 3d at 898. And while the letters that Bowling submitted do emphasize the existence of her mother's "health problems," the Court is not willing to find her mother incapacitated without a substantially stronger degree of medical support. *See* DE 180-2 at 32–33. Bowling's failure to establish her mother's incapacitation defeats her claims under both § 1B1.13(b)(3)(A) and § 1B1.13(b)(3)(C). The records, which are all dated, suggest that at the time Mrs. Bowling was working as a hotel housekeeper. A person fulfilling such a job is far from incapacitated.

And with respect to Bowling's § 1B1.13(b)(3)(C) claim in particular, Movant has not established that she is the sole available caregiver for her mother. In conducting this inquiry, courts look to whether there is any other person that can provide adequate care. *See United States v. Mathews*, No. 2:19-CR-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023) (finding defendant was not only available caregiver when she failed to produce evidence that the child's father was

not a suitable caregiver); *United States v. Delgado*, No. 3:15-CR-246, 2023 WL 4552890, at *2 (M.D. Pa. July 14, 2023) (determining defendant was required to establish that all other potential caregivers were incapacitated).

Bowling does not describe her mother's living situation, identify her possible existing caregivers, or make any effort to demonstrate that she is the sole available caregiver. *See generally* DE 180-1.  And indeed, the medical records that Bowling has tendered suggest that her sister *can* provide her mother with adequate care.  *See id.* at 22 ("Her daughter lives in the home with her and will be able to assist with her care postoperatively.").[5]  Whether the sister lives there or not, the several adults that wrote for April Bowling signifies to the Court that others are in the mix if and when Mrs. Bowling has a need for care.  As a result, Bowling has not carried her burden.

### ii. Catchall Category (§ 1B1.13(b)(5))

Bowling is likewise unable to rely on the catchall category enumerated in § 1B1.13(b)(5) to establish an extraordinary and compelling reason for release.  Because Bowling entirely failed to carry her burden under § 1B1.13(b)(3)—a category directly applicable to the present matter—she cannot now rely on § 1B1.13(b)(5) to argue that her circumstances are "similar in gravity" to one of the categories set out in § 1B1.13(b).  That is, Bowling's failure to make anything approaching an adequate showing on a directly applicable category defeats the notion that her circumstances are "similar in gravity" to any single category.

And while Bowling gestures toward some other bases for relief—including the BOP's purported miscalculation of her sentence, her rehabilitative efforts, and the allegedly inadequate medical treatment she has received while in BOP custody—none are sufficient.  First, Bowling's argument that the BOP has failed to accurately calculate her time served, *see* DE 180-1 at 3–8, is

---

[5] The fact that Bowling's sister does not currently live with her mother does not change the Court's conclusion that she could, if needed, provide adequate care.  *See* DE 180-2 at 34.

8

not properly raised under § 3582(c).  Bowling should raise that argument, if anywhere, under 28 U.S.C. § 2241, which is the proper vehicle for "claims challenging the execution or manner in which [a] sentence is served."  *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Second, Bowling's rehabilitative efforts, taken alone, are simply not enough to establish extraordinary and compelling circumstances.  *See* 28 U.S.C. § 994(t); *see also United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021); *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022).  While Bowling's efforts may be laudable, they are also expected.  And third, Bowling's medical care argument is waived on account of her failure to meaningfully raise and substantiate it in her initial motion.[6]  *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986)) ("An argument raised for the first time in a reply brief will not be considered."); *see also Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)) ("We have consistently held . . . that arguments made to us for the first time in a reply brief are waived.").  Even if the Court *were* to provide Bowling's medical care argument with due consideration, the Court would deny it on account of her failure to produce sufficient evidence. Bowling does nothing to marshal or satisfy any of the specific § 1B1.13(b)(1) gates; a generic and unsubstantiated argument simply will not suffice.

In sum, Bowling has failed to establish extraordinary and compelling reasons that render her eligible for release or a reduction in  sentence within the requirements of § 1B1.13.  But even if Bowling *had* presented extraordinary and compelling reasons, the Court would still deny her motion upon consideration of the § 3553(a) factors.

---

[6] The brief reference to a "lack of proper medical care" in Bowling's introduction paragraph is insufficient. *See* DE 180-1 at 2.

9

## 2.    The § 3553(a) Factors Do Not Favor Release

When denying Bowling's first motion for compassionate release, the Court noted that even if she had established extraordinary and compelling reasons justifying sentence reduction, the § 3553(a) factors would still foreclose the requested relief. *See* DE 163 at 5–6. To summarize the Court's previous analysis:

> Bowling is in prison for her significant role in a rangy methamphetamine trafficking conspiracy. Bowling developed a source in Georgia and would travel there, and direct others to travel there, to obtain methamphetamine for distribution in Kentucky. In doing so, Bowling caused more than 500 grams of methamphetamine to be transported to, and distributed in, eastern Kentucky. Ultimately, the Court attributed between 5 and 15 kilograms of methamphetamine to Bowling . . . . At the time of her sentencing, Bowling . . . was a category VI, and had a history of crime including drug recidivism. She managed a high-volume meth ring over a lengthy period, continuing despite [intercession] by law enforcement. Her crime occurred during a period of court oversight. Bowling's history and case circumstances make releasing her with 13 years left to serve glaringly inappropriate. . . . The sentence parsimoniously aimed at showing crime gravity, promoting respect for the law, justly punishing, adequately deterring crime, and effectively protecting the public from a person of demonstrable danger. Releasing Bowling now would enervate the purposes that catalyzed the sentence. Bowling's significant leadership role, the quantity of methamphetamine involved, and the mandatory minimum (otherwise) applicable to the offense signal crime gravity and the need for a correspondingly serious, fairly punitive, sufficiently deterrent, and responsibly protective sentence.

*Id.* at 6 (internal citations omitted). The views and values that the Court expressed on those factors then and at sentencing remain just as applicable today. Even now, less than half of the 206 imposed prospective months have passed. From the GCT standpoint, Bowling is at roughly 53% of her statutory term. The Court does not employ half measures at sentencing, and the federal system means what it says in terms of imposed carceral terms. The Court recognizes signs of progress, but Bowling authored a Class A crime and earned a sure and stout term. The values of § 3553 continue to support the Court's view that the sentence, which accounted for every statutory purpose and aim, must be served.

10

Bowling has the Court's sympathy.  But sympathy is not enough to warrant relief.  The Court maintains hope that Bowling will emerge from custody as a law-abiding, sober, and productive person.  She certainly has the capacity to do so.  For now, however, Bowling owes this debt to society.  And until Bowling finishes serving her sentence, she has not paid that debt.

**IV.    CONCLUSION**

For the stated reasons, the Court DENIES DE 180.

This the 18th day of May, 2026.

Signed By:

_Robert E. Wier_

**United States District Judge**